IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| W.L., proceeding under pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF OREGON, by and through its OREGON YOUTH AUTHORITY; KAREN BRAZEAU, an individual; ROBERT JESTER, an individual; COLETTE PETERS, an individual; DIRECTORS #1-5, individuals; CHRIS DUVAL, an individual; SUPERINTENDENTS #1-5, individuals; UNKNOWN STAFFERS #1-5, individuals; LORI KENNY, an individual; DOMINIQUE STEINKELLNER, an individual; and CHAN SAECHAO, an individual,<br><br>Defendants. | Case No. 26CV12745<br><br>COMPLAINT<br>(Alleging: Negligence; 42 U.S.C. § 1983 – 14th amendment substantive due process and liberty interest; 42 U.S.C. § 1983 8th amendment cruel and unusual punishment, excessive force; Sexual Battery of a Child – Respondeat Superior)<br><br>Jury Trial Requested<br><br>Not Subject to Mandatory Arbitration<br><br>Prayer for Relief: $5,200,000.00<br>Fee Authority: ORS 21.160(1)(d) |

Plaintiff W.L. ("Plaintiff") alleges as follows:

### INTRODUCTION & PARTIES

1.

Plaintiff was born in 1989 and is now a 36-year-old adult male residing in the State of Oregon. At all times relevant, Plaintiff was a minor child in the physical and legal custody of the State of Oregon, Oregon Youth Authority ("OYA"). Plaintiff proceeds under a pseudonym due to the sensitive nature of allegations set forth herein.

///

Page 1 of 17 | **COMPLAINT**

2.

OYA is an agency of the State of Oregon responsible for the custody and care of adjudicated youth ("**Youth**"). OYA operates multiple juvenile correctional facilities across the state of Oregon, including Hillcrest Youth Correctional Facility ("**Hillcrest**") in Salem, Oregon (which was open until 2017, at which time it closed and moved operations to MacLaren Youth Correctional Facility ("**MacLaren**") in Woodburn, Oregon), and Rogue Valley Youth Correctional Facility ("**Rogue Valley**") in Grants Pass, Oregon.

3.

OYA serves individuals ages 12 to 24 who have committed crimes before the age of 18. OYA's published material states that OYA "hold[s] youth accountable and provide[s] them with opportunities for reformation[;]" that "[r]esearch shows that the human brain continues developing until at least our mid-20s, impacting judgment and decision-making for adolescents[;]" and that OYA "provide[s] youth with treatment, education, and other guidance to help them take responsibility for their behavior and learn how to act differently in the future *** in safe, supportive environments that will help them become responsible, community-minded citizens." OYA employs hundreds of individuals who provide these services to Oregon's youth and OYA is statutorily liable for the tortious conduct of the individuals acting within the scope of their employment with OYA.

4.

From 1996 through 2006, Defendant Chris Duval ("**Duval**") was employed as Hillcrest's Superintendent, during which time he acted under color of state law. Plaintiff is suing Duval in his personal capacity. At all times relevant, Duval acted within the course and scope of his duties and employment with OYA.

Page 2 of 17 | **COMPLAINT**

5.

From 2001 through 2004, OYA employed defendant Karen Brazeau ("**Brazeau**") as the OYA Director, during which time she acted under color of state law. Plaintiff is suing Brazeau in her personal capacity.  At all times relevant, Brazeau acted within the course and scope of her duties and employment with OYA.

6.

From 2004 through 2008, OYA employed defendant Robert Jester ("**Jester**") as the OYA Director, during which time he acted under color of state law. Plaintiff is suing Jester in his personal capacity.  At all times relevant, Jester acted within the course and scope of his duties and employment with OYA.

7.

From 2009 to 2012, OYA employed defendant Colette Peters ("**Peters**") as OYA Director, during which time she acted under color of state law. Plaintiff is suing Peters in her personal capacity.  At all times relevant, Peters acted within the course and scope of her duties and employment with OYA.

8.

Defendant Lori Kenny ("**CO Kenny**") was, at all times relevant, employed by OYA and acting under color of state law. Plaintiff is suing CO Kenny in her personal capacity.  At all times relevant, CO Kenny acted within the course and scope of her duties and employment with OYA.

9.

Defendant Dominique Steinkellner ("**CO Steinkellner**") was, at all times relevant, employed by OYA and acting under color of state law. Plaintiff is suing CO Steinkellner in her

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 3 of 17

personal capacity.  At all times relevant, CO Steinkellner acted within the course and scope of her duties and employment with OYA.

10.

Defendant Chan Saechao ("**CO Saechao**") was, at all times relevant, employed by OYA and acting under color of state law. Plaintiff is suing CO Saechao in his personal capacity.  At all times relevant, CO Saechao acted within the course and scope of his duties and employment with OYA.

11.

Upon information and belief, defendants Directors #1-5 ("**Directors #1-5**") are current or former employees of the State of Oregon whose identities are currently unknown to Plaintiff. At all times relevant, Directors #1-5 were employed as directors of OYA and acted under color of state law. Plaintiff is suing Directors #1-5 in their personal capacities.  At all times relevant, Directors #1-5 acted within the course and scope of their duties and employment with OYA. Brazeau, Jester, Peters, and Directors #1-5 shall hereinafter collectively be referred to as the "**Directors**".

12.

Upon information and belief, defendants Superintendents #1-5 ("**Superintendents #1-5**") are residents of the State of Oregon whose identities are currently unknown to Plaintiff. At all times relevant, Superintendents #1-5 were employed by OYA as superintendents at Rogue Valley and acting under color of state law. Plaintiff sues Superintendents #1-5 in their personal capacities.  At all times relevant, Superintendents #1-5 acted within the course and scope of their duties and employment with OYA. Duval and Superintendents #1-5 shall hereinafter collectively be referred to as the "**Superintendents**".

///

Page 4 of 17 | **COMPLAINT**

13.

Upon information and belief, defendants Unknown Staffers #1-5 ("**Unknown Staffers**") are current or former OYA employees who were aware of some, or all, of the tortious conduct set forth in this complaint and failed to report or otherwise stop the tortious conduct. Unknown Staffs' identities are currently unknown to Plaintiff but believed to be residents of Oregon.

<u>FACTUAL BACKGROUND</u>

**OYA's Response to PREA Legislation**

14.

Plaintiff realleges and incorporates paragraphs 1 through 13 herein by this reference.

15.

When the legislature passed the "2003 Prison Rape Elimination Act ("**PREA**"), OYA claimed that it began to rapidly set standards designed to prevent, detect, monitor, and respond to sexual abuse in both adult and juvenile custody settings "[w]ith the goal of being a national leader" in PREA implementation.

16.

OYA claims that it is committed to "a zero-tolerance policy towards sexual and other threats of harm". To that end, OYA created the Professional Standards Office ("**PSO**") to document, track, and investigate allegations of abuse. Before it established the PSO, OYA had minimal, if any, policy or procedure in place to monitor, report, investigate, or track allegations of Youth sex abuse against OYA personnel. OYA required staff to report any knowledge, suspicion, or youth reports (verbal or written) of abuse or harassment; established an OYA toll-free hotline where Youth could report sexual abuse; and designated a PREA compliance manager at each correctional facility.

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 5 of 17

17.

Despite apparent organizational efforts, OYA has long ignored reports that its staff were sexually abusing Youth in its facilities.  Perhaps even worse, OYA has a practice of retaliating against individuals who report such sex abuse.  OYA's patterns and practices created and nurtured an environment where sexual abuse and intimidation could flourish, including but not limited to:

    a.  Permitting a large backlog of abuse reports to linger;

    b.  Failing to timely investigate abuse reports;

    c.  Failing to properly train staff to identify, report, and/or stop abuse;

    d.  Failing to report known incidents of sexual abuse to external investigative agencies;

    e.  Failing to implement policies that would protect Youth from staff sexual abuse.

18.

Through a series of lawsuits and media coverage regarding unchecked sexual abuse of its Youth, OYA is well-aware of its systemic failures to prevent staff abuse of its Youth.  Plaintiff was one of those Youth.

### OYA Staff's Unmitigated Sexual Abuse of Plaintiff

19.

Plaintiff realleges and incorporates paragraphs 1 through 18 herein by this reference.

20.

In or around 2001, Plaintiff became an adjudicated youth in Douglas County, Oregon. Plaintiff was around the age of 11 or 12 at that time and relatively small in stature.  After adjudication, OYA housed Plaintiff at Ridge Valley where OYA also housed Plaintiff's brother – who was in OYA's custody because he victimized Plaintiff.

Page 6 of 17 | **COMPLAINT**

**LAFKY & LAFKY**
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 6 of 17

21.

Sometime between 2001 and 2002, OYA transferred Plaintiff from Ridge Valley to Hillcrest where OYA placed him in a dormitory referred to as the "Chi Dorm" where he was immediately victimized. The victimization continued – unmitigated – for several years thereafter.

22.

**Correctional Officer Leonid Zuniga.** OYA Correctional Officer (a "CO"), Leonid Zuniga ("**CO Zuniga**"), was one of the COs OYA assigned to work the Chi Dorm when it housed Plaintiff at Hillcrest. When Plaintiff was 12 years old, CO Zuniga would watch Plaintiff shower – not to monitor him, but to open the shower door as wide as possible and stare at Plaintiff inappropriately while he cleaned himself. The sexual nature of CO Zuniga's conduct was clear to Plaintiff, in part, because CO Zuniga engaged in other sexually inappropriate conduct toward Plaintiff such as 'showing off' the outline of his penis to Plaintiff through his shorts.

23.

**Correctional Officers Lori Kenny and Dominique Steinkellner.** In or around 2002, OYA assigned two COs to the Hillcrest Chi Dorm – COs Kenny and Steinkellner – who started grooming Plaintiff for sexual abuse, sexually abusing Plaintiff, and engaging in sexually inappropriate behavior toward and around Plaintiff. COs Kenny and Steinkellner's physical, mental, and sexual abuse of Plaintiff included, but was not limited to:

a.  In or around 2002 – showed the Youth and Plaintiff an explicit and graphic German movie involving children engaging in underage sex, crime, drug abuse, prostitution, and death by overdose.

Page 7 of 17 | **COMPLAINT**

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 7 of 17

b. In or around 2002-2003 – engaged in grooming behavior by touching Plaintiff's buttocks, arms, and penis. Eventually, they approached Plaintiff while he was urinating, demanded that he show them his penis, touched Plaintiff's penis until he ejaculated, laughed at him, tasted his semen, then immediately began to act as though Plaintiff was causing problems and sent him to the Quiet Room for several days as 'punishment'. Quiet Rooms ("QR") were the juvenile version of solitary confinement.

c. On multiple occasions, they forced Plaintiff to the floor while one of them would sit on Plaintiff's head and suffocate him while the other punched Plaintiff about his body causing Plaintiff to suffer from multiple broken or 'moving' bones and bruising. Plaintiff did not receive medical care.

d. When Plaintiff was assigned to wax floors under CO Kenny's supervision, CO Kenny would perform fellatio on Plaintiff while digitally penetrating his rectum. Plaintiff resisted and CO Kenny persisted.

e. After Plaintiff was sent to the shower room, COs Kenny and Steinkellner approached him and sexually abused him to the point of hematochezia. The COs then ordered Plaintiff to QR as 'punishment.' Plaintiff did not receive medical treatment and had to use toilet paper to stop the bleeding.

f. Upon information and belief, OYA knew of CO Kenny's sexual abuse of another Youth. When CO Kenny no longer worked for OYA, CO Steinkellner stopped sexually abusing Plaintiff and started sending Plaintiff to QR for even minor perceived infractions.

///

///

Page 8 of 17 | **COMPLAINT**

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 8 of 17

24.

**Correctional Officer Chan Saechao.** CO Chan Saechao was aware of COs Kenny and Steinkellner's abuse of Plaintiff and did not report it or otherwise attempt to stop it. In fact, CO Saechao often pressed his body against Plaintiff's and made jokes about the sexual abuse. On one occasion, CO Saechao approached Plaintiff in the shower room and engaged in nonconsensual sexual intercourse with Plaintiff.

25.

OYA COs engaged in tactics designed to discourage or prevent Plaintiff from reporting the sexual abuse including, but not limited to threatening discipline, imposing discipline, extending discipline, withholding privileges, and telling Plaintiff that no one would believe him.

26.

**Other Youth.** Other Youth also physically and sexually abused Plaintiff while they were housed at Hillcrest together. OYA COs were aware of the abuse, did nothing to protect Plaintiff or to prevent the abuse, and did nothing to stop the abuse.

27.

**Gang Rape.** In or around 2004-2005, while OYA housed Plaintiff in the dormitory referred to as the "Epsilon Dorm," other Youth housed in the Epsilon Dorm repeatedly beat, gang raped, and abused Plaintiff. It is not credibly possible that OYA did not know that Plaintiff was being abused.

28.

The physical, mental, and sexual abuse at OYA was so severe that it left Plaintiff with lifelong medical and psychological issues.

///

Page 9 of 17 | **COMPLAINT**

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 9 of 17

29.

In or around 2005, OYA transferred Plaintiff back to Ridge Valley. Upon arrival, OYA conducted a physical intake. The following day, OYA conducted a second physical during which the medical professional (presumably a physician) physically manipulated Plaintiff's penis for what seemed to be an unnecessarily long period of time.

30.

In or around 2006, CO Boulder (first name unknown at this time) approached Plaintiff while he was showing. CO Boulder showed his penis to Plaintiff and then pinched Plaintiff's penis with such force that it caused Plaintiff to scream.

31.

As a direct and proximate cause of Defendants' tortious conduct, as described in the paragraphs above, Plaintiff endured physical pain and suffering, permanently detached bones, fear, anxiety, anguish, anger, humiliation, long-term psychological and/or psychiatric problems, many of which are permanent in nature, all to his noneconomic damage of $5,000,000. Plaintiff incurred and/or will incur expenses for psychological, psychiatric, and surgical treatment in the approximate amount of $200,000, to be proved with more particularity at trial.

## FIRST CLAIM FOR RELIEF

### Negligence under the Oregon Tort Claims Act

32.

Plaintiff realleges and incorporates paragraphs 1 through 31 herein by this reference.

///

///

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 10 of 17

33.

OYA has duties to Plaintiff arising under a special relationship, the U.S. Constitution, state and federal laws, and state and federal rules and regulations.  OYA has duty to not put Plaintiff in state-created danger under the 5th, 8th, and 14th amendments to the U.S. Constitution.  The state involuntarily placed Plaintiff in its custody and housed him in facilities where the staff abused him, the Youth abused him, and the Superintendents and Directors knew or should have known of the dangers and knowingly put him in danger.  Furthermore, by taking custody of Plaintiff and acting *in loco parentis* toward him during his confinement, OYA entered a special relationship with Plaintiff. At all times relevant, Defendants had a special relationship with Plaintiff by virtue of their statutory obligations to children in their care generally, and to Plaintiff specifically. As Plaintiff's legal and physical guardians and custodians, Defendants owed Plaintiff a heightened duty of care to: protect him from reasonably foreseeable threats of harm by others including physical, mental, and emotional harm; not place him in danger created by it; provide conditions, treatment, and care consistent with the purpose and assumption of custody; protect him from unreasonably dangerous persons; provide reasonable supervision of the persons tasked with providing services to Plaintiff; protect him from abuse and injury while in OYA's care.

34.

OYA had legal custody of Plaintiff and had the following statutory duties toward Plaintiff as a result of that custody: to provide him with care, education, and discipline (ORS 419C.550(3)), to authorize ordinary medical, psychiatric, psychological, and emergency care when his safety appears urgently to require it (ORS 419C.550(4)), supervise the management and administration of youth correction facilities (ORS 420A.010(1)(a)), provide adequate health care, medical care,

**LAFKY & LAFKY**
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 11 of 17

and security (ORS 420A.010(1)(e)), require staff to report sexual abuse or harassment (PREA), report sexual abuse or harassment to the victim's parents (PREA), report sexual abuse or harassment to the victim's attorney (PREA), report sexual abuse or harassment to the head of the facility, office of the agency where the abuse occurred, and the appropriate investigative agency (PREA), ensure that allegations of sexual abuse or harassment are investigated (PREA),

35.

Defendants' breached their duty of care as set forth in the paragraphs above. Defendants' conduct and care fell unreasonably below the applicable standard of care and negligently and unreasonably created foreseeable risk of harm to Plaintiff in one or more of the following particulars:

   a. In failing to notice, investigate, or intervene to protect Plaintiff from inappropriate and sexual conduct towards him;

   b. In failing to properly supervise Correctional Officers at OYA facilities;

   c. In failing to properly heed, investigate, or otherwise take any action in response to reports of inappropriate conduct and sexual abuse by Correctional Officers or other youth;

   d. In failing to report or refer reports of inappropriate conduct and sexual abuse by Correctional Officers to Plaintiff's parent(s), attorney, appropriate agencies, and external investigative agencies;

   e. In failing to properly vet, hire, train, and retain qualified personnel, including medical providers;

   f. In failing to provide adequate health and medical care; and

Page 12 of 17 | **COMPLAINT**

g.  In failing to provide adequate security.

36.

OYA's negligence caused Plaintiff's injuries and damages set forth in paragraph 31. Plaintiff requests reasonable attorney fees and costs.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 Civil Rights Violation

(14th Amendment Substantive Due Process, Liberty Interest)

(Against all Individual Defendants)

37.

Plaintiff realleges and incorporates paragraphs 1 through 36 herein by this reference.

38.

While Plaintiff was in OYA's custody he had a liberty interest in his bodily integrity and in being free from the abuse while in the custody of OYA, subject to substantive due process rights guaranteed by the 14th amendment to the U.S. Constitution.  Defendants were in a special relationship with Plaintiff.  Defendants had a constitutional duty to keep Plaintiff reasonably safe from abuse, including sexual abuse.  Defendants failed to provide for Plaintiff's reasonable safety while confined in OYA facilities as described in the paragraphs above.

39.

Through the failures outlined above, the Directors and Superintendents created the conditions at Rogue Valley and Hillcrest under which sexual contact with Plaintiff was possible and put Plaintiff in a more dangerous situation than he would have faced otherwise.

///

Page 13 of 17 | **COMPLAINT**

40.

Those conditions put Plaintiff at substantial risk of suffering serious harm, namely, the risk that Plaintiff would be sexually abused by OYA staff or employees.

41.

The Directors and Superintendents failed to take reasonable available measures to abate the risk that Plaintiff would be sexually abused by a staff member while confined at Rogue Valley and Hillcrest.

42.

The Directors and Superintendents, in failing to act to protect Plaintiff from sexual abuse, failed to provide for Plaintiff's reasonable safety.

43.

The Directors' and Superintendents' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards.

44.

In so doing, given the history at OYA, the Directors and Superintendents evinced deliberate indifference to Plaintiff's right to be free from coerced sexual contact with Defendants' employees.

45.

No Defendants took reasonable, appropriate, and legally mandated steps to stop sexual abuse from occurring.

///

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 14 of 17

46.

Individual Defendants' violations of Plaintiff's civil rights set out above caused Plaintiff injuries and damages set forth above. As a result, Plaintiff suffered the harm and damages alleged herein. Pursuant to 42 U.S.C. § 1988, Plaintiff is also entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983 Civil Rights Violation

(8th Amendment Cruel and Unusual Punishment)

(Against all Individual Defendants)

47.

Plaintiff realleges and incorporates herein paragraphs 1 through 46.

48.

Defendants were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

49.

Through the failures outlined above, the Directors and Superintendents created the conditions at Hillcrest and Rogue Valley under which Employees' sexual contact with Plaintiff was possible.

50.

Individual Defendants' violations of Plaintiff's civil rights set out above caused Plaintiff's injuries and damages set out herein. As a result, Plaintiff suffered the harm and damages alleged

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 15 of 17

herein. Pursuant to 42 U.S.C. § 1988, Plaintiff is also entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

## FOURTH CLAIM FOR RELIEF

Sexual Battery of Child Respondeat Superior

(Against Defendant OYA)

51.

Plaintiff realleges and incorporates paragraphs 1 through 50 herein by this reference.

52.

While acting in the course and scope of their employment at OYA, Defendants' employees engaged in harmful and offensive touching of Plaintiff to which Plaintiff did not or could not consent, including groping his genitals, attempted masturbation, and digital penetration, as set out more specifically above.

53.

Acts within the course and scope of Defendant OYA led to or resulted in the sexual batteries of Plaintiff.

54.

As a direct result of the sexual batteries, Plaintiff has incurred economic and noneconomic damages as set out more fully above. Defendant OYA is vicariously liable for the sexual batteries of its employees. Therefore, Plaintiff is entitled to damages as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

 On the First Claim for Relief for Negligence:

Page 16 of 17 | **COMPLAINT**

**LAFKY & LAFKY**
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

Exhibit 1
Page 16 of 17

a) Economic damages in the amount of $200,000;

b) Noneconomic damages in the amount of $5,000,000; and

c) Costs and disbursements incurred herein.

On the Second Claim for Relief for Civil Rights Violations 14th Amendment Due Process:

a) Economic damages in the amount of $200,000;

b) Noneconomic damages in the amount of $5,000,000;

c) Attorney fees incurred herein pursuant to 42 U.S.C. § 1988;

d) Costs and disbursements incurred herein; and

e) Any other relief that the Court deems necessary.

On the Third Claim for Relief for Civil Rights Violations 8th Amendment Cruel and Unusual Punishment:

a) Economic damages in the amount of $200,000;

b) Noneconomic damages in the amount of $5,000,000; and

c) Costs and disbursements incurred herein.

On the Fourth Claim for Relief for Sexual Battery of a Child Respondeat Superior:

a) Economic damages in the amount of $200,000;

b) Noneconomic damages in the amount of $5,000,000; and

c) Costs and disbursements incurred herein.

DATED: March 16, 2026.

/s /Kevin T. Lafky
Kevin T. Lafky, OSB#852633
klafky@lafky.com
**LAFKY & LAFKY**
*Of Attorneys for Plaintiff*

Page 17 of 17 | **COMPLAINT**